## ASHBAUGH v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit.
June 16, 1926.)

### No. 4590.

**1. Embezzlement ⬿47.**

Question of trustee's guilt for fraudulently appropriating moneys of bankrupt estate and retaining sums of bankrupt estate after demand, in violation of Act May 29, 1920 (Comp. St. Ann. Supp. 1923, § 10267a), *held* for jury.

**2. Criminal law ⬿393(1).**

In prosecution of trustee for fraudulently appropriating moneys of bankrupt estate, admission of trustee's account, bank checks, and evidence of his banking transactions *held* not erroneous, as compelling trustee to testify against himself.

**3. Criminal law ⬿563.**

Corpus delicti, in prosecution of trustee for fraudulently appropriating moneys of bankrupt estate, is proved on substantial testimony of alleged offense, presented to jury and accepted as convincing of guilt beyond reasonable doubt.

**4. Criminal law ⬿680(1).**

Order in which evidence shall be received is largely within discretion of trial court.

**5. Embezzlement ⬿44(1)—Conviction of trustee for retaining moneys of bankrupt estate can be had without producing check alleged to have been falsely debited against bank account (Act May 29, 1920 [Comp. St. Ann. Supp. 1923, § 10267a]).**

Conviction of trustee under Act May 29, 1920 (Comp. St. Ann. Supp. 1923, § 10267a), for knowingly and willfully retaining sums of bankrupt estate, can be had without producing check alleged to have been falsely debited against bank account, since presumably it was not accessible to government.

**6. Criminal law ⬿1177—In prosecution of trustee for fraudulently appropriating and retaining moneys of bankrupt estate, that statute on which latter part of prosecution was based provides for specified punishment, where offense was not punishable by other statute, held immaterial, where judgment was less than was punishable on conviction under any one of the counts on which conviction was had (Act May 29, 1920 [Comp. St. Ann. Supp. 1923, § 10267a]; Bankruptcy Act, § 29 [Comp. St. § 9613]).**

In prosecution of trustee for fraudulently appropriating moneys and retaining funds of bankrupt estate, that Act May 29, 1920 (Comp. St. Ann. Supp. 1923, § 10267a), on which latter portion of prosecution was based, provides for specified punishment, where not otherwise punishable by statute, *held* immaterial, there being no other applicable statute, unless Bankruptcy Act, § 29 (Comp. St. § 9613), applies, and misreference in indictment to statute not being fatal to acts constituting offense under any statute, especially where judgment was less than was punishable under any one of the counts on which conviction was had.

**7. Embezzlement ⬿47—Intent of bankruptcy trustee relative to checks withdrawing sums from estate being used in furtherance of trust, or to appropriate for his own use, held for jury.**

In prosecution of trustee for fraudulently appropriating moneys of bankrupt estate, whether checks containing signature of referee, without statement or purpose for which check was given, represented items which were withdrawn with intent to use them in furtherance of trust, or to appropriate them to defendant's own use, *held* for jury.

**8. Criminal law ⬿1166½(12)—Statement of judge that referee had pleaded guilty to extortion and was sentenced held not reversible error, when made during comment on referee's signature appearing on face of checks alleged to have been appropriated by bankruptcy trustee.**

In prosecution of trustee for fraudulently appropriating moneys of bankrupt estate, statement of judge, in commenting on signature of referee appearing on face of check, that record showed that referee had pleaded guilty to extortion in court and was sentenced, *held* not reversible error, since judicial cognizance was proper, if facts were relevant.

**9. Criminal law ⬿762(3).**

Where jury was instructed that judge's views on facts were not controlling, instruction that in judge's opinion check alleged to have been fraudulently appropriated by trustee of bankrupt estate tended to show amount was withdrawn for defendant's use *held* proper.

In Error to the District Court of the United States for the Eastern Division of the Southern District of Ohio; Smith Hickenlooper, Judge.

Paul M. Ashbaugh was convicted for fraudulently appropriating moneys which came into his hands as trustee of a bankrupt estate, and for knowingly and willfully retaining such funds after demand therefor, and he brings error. Affirmed.

D. B. Ulrey, of Columbus, Ohio, and J. W. Barry, of Mt. Gilead, Ohio (Franklin Rubrecht, of Columbus, Ohio, on the brief), for plaintiff in error.

John H. Matthews, Asst. U. S. Atty., of Columbus, Ohio (Haveth E. Mau, of Cincinnati, Ohio, and Wm. B. Bartels, of Columbus, Ohio, on the brief), for the United States.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

KNAPPEN, Circuit Judge. Plaintiff in error was the trustee in bankruptcy of the Knox Tire & Rubber Company, whose affairs and plaintiff in error's connection therewith were in part litigated in the matter of the petition of Stillwell and Levering (No. 4545) and the matter of Paul M. Ashbaugh, trustee

(No. 4546), 12 F.(2d) 205, decided by this court April 9, 1926.

The conviction was upon four counts of an indictment; the second, third, and fourth counts being under Bankruptcy Act, § 29 (Comp. St. § 9613), for fraudulently appropriating to defendant's own use certain moneys of the bankruptcy estate which had come into his hands as such trustee— by the second count, $250, February 15, 1924; by the third, $300, February 29, 1924; by the fourth, $500, March 6, 1924. The fifth count is drawn under the Act of May 29, 1920 (41 Stat. 630, c. 212; U. S. C. S. 1923 Supp. §§ 10, 267a) for knowingly and willfully retaining $440, which had come into his hands by reason of the bankruptcy, after demand therefor by the receiver of the bankrupt's estate. The indictment describes this sum as having been falsely claimed by plaintiff in error as paid to the county treasurer as penalty for delinquent taxes.

Defendant was chosen trustee in bankruptcy in the early fall of 1921. One Greer was then referee in bankruptcy. About the fall of 1924 the latter was removed from office by the District Judge, and Frederick N. Sinks was appointed referee in his place. At about the same time the defendant was removed from the office of trustee, and Max H. Gumble was appointed receiver of the remaining bankruptcy estate, which seems to have been collected in by December 12, 1923, and largely by July 23, 1922. The last disbursement made by defendant seems, from his "first and final account," to have been made June 12, 1924. The criticisms of the proceedings in the District Court, so far as reference thereto seems necessary, will sufficiently appear in the course of this opinion.

[1] 1. The District Court did not err in refusing to direct verdict for defendant. To our minds there was ample testimony tending substantially to show the fraudulent misappropriation by defendant to his own use of the sums involved in the second, third, and fourth counts of the indictment, and of the knowing and willful retention by him of the item which forms the subject-matter of the fifth count. It appears by the "trustee's first and final account," rendered by him on August 9, 1924, and turned over by former Referee Greer to his successor, Referee Sink, that defendant received and credited the estate with $182,278.65, and that he charged the estate with but $157,376.61, including the large payments to Greer for services as referee and special master, and to Levering and Stillwell for attorney's fees, which were litigated in

Nos. 4545 and 4546 before referred to, as well as items aggregating $1,000 to himself as trustee's compensation, thus leaving an apparent "balance due said estate" of $24,901.94. It appeared by the undisputed testimony of one of the bank officers that at the date of said account the actual balance in bank was but $2,421.28. The great bulk of the receipts shown by the defendant's trustee's report consisted of $175,000 paid by the purchaser of the bankrupt's plant, the last installment of which was paid July 23, 1922.

Receiver Gumble testified to the making of personal demand on defendant November 3, 1924, for the balance of $24,507.04, as shown by the account, and that no payment was made in response thereto until November 10, 1924, when defendant paid $17,199.76, after meanwhile promising payment two or three times, and that with the exception of $435, paid nine days later, defendant made no further payments. The then United States district attorney testified to a conversation with defendant in the presence of then District Judge Sater, Receiver Gumble, and another person, in which defendant admitted that the reason he had not paid the receiver the balance of the account, "something like $15,000," was because he had used the money and was short in his account. There was testimony that $5,000 of the first $75,000 payment made on sale of the plant was deposited in the personal account of defendant in another bank, not then a designated depository for bankruptcy funds, and entirely drawn out on defendant's personal checks, instead of being placed with the remaining $70,000 in defendant's account as trustee in another bank.

An officer of the bank in which the account of Ashbaugh, trustee, was kept, produced 15 checks drawn thereon to defendant's personal order from October 18, 1921, to December 17, 1923, aggregating $6,674.04, including a check of $500, dated September 13, 1922, marked "Compensation as allowed by referee 9—11—22"; another of the same amount, dated October 17, 1922, marked "Compensation as ordered by referee"—as well as checks on the respective dates and for the respective amounts chargd in the second, third, and fourth counts, respectively, to have been fraudulently misappropriated by defendant. Each of these 15 checks bore defendant's personal indorsement. It was open to fair inference that the three checks last referred to were cashed for and used by defendant for his own personal purposes. It also appeared that defendant included in his charge of July 25, 1922 (in his first and final account),

against the bankrupt's estate $440 more than was actually paid; the last-named amount having been deducted by virtue of an auditor's deduction or remission slip presented by defendant when prosecuting attorney of the county, with the statement that the penalties (shown by the auditor's slip at $442.31) had been dropped by court order. None of this testimony presented by the government was disputed. Neither defendant nor former referee Greer testified.

A witness produced by defendant testified that, in his examination of defendant's final account as trustee, he discovered that defendant had not accounted for all the moneys coming into his hands as trustee, and that there were several items in the account with which defendant credited himself which had not in effect been paid as credited.

We think that upon the testimony in the case it was open to the jury to find that the four items charged in the indictment were fraudulently misappropriated or withheld. Presumably the four items counted upon were selected by the government because clearly not barred by limitation.

[2] We see no merit in the contention that by the admission in evidence of defendant's official trustee's account rendered to the then referee, or by the presentation of his bank checks and evidence of his banking transactions, he was compelled to testify against himself. Nor do we see any force in the proposition that the corpus delicti was not proved. [3, 4] Defendant's guilt or innocence depended upon his state of mind, intent and motives. As applied to a case of this nature, where no offense has been committed, except as defendant's actions are found to create one in fact and in law, the "corpus delicti" is proven when substantial testimony tending to prove defendant's commission of that alleged offense is presented to the jury, and accepted by the latter as convincing of guilt beyond a reasonable doubt. Cf. Breitmayer v. United States (C. C. A. 6) 249 F. 929, 931 et seq., 162 C. C. A. 127. See, also, Rosenfeld v. United States (C. C. A. 7) 202 F. 469, 474, 120 C. C. A. 599. The order in which the evidence shall be received is largely within the discretion of the trial court. Gladstone v. United States, C. C. A. 9, 248 F. 117, 119-120, 160 C. C. A. 257, certiorari denied 247 U. S. 521, 38 S. Ct. 582, 62 L. Ed. 1246.

[5, 6] 2. We cannot agree with defendant's contention that no conviction can be had under the fifth count, from the fact that the check for $440, which, as testified, was a debit against defendant's bank account as trustee, was not presented on the trial. Presumably the voucher was not accessible to the government. The amount was apparently included in defendant's charges for taxes paid.[1] Nor is it of practical importance to the disposition of this case that the Act of May 29, 1920, under which the fifth count was drawn, provides for a specified punishment "where the offense is not otherwise punishable by some statute of the United States." This is so, not only because our attention is called to no other applicable statute than that of 1920, unless Bankruptcy Act, § 29, applies, and a misreference in the indictment to the statute is not fatal, if the acts charged constitute an offense under any statute of the United States (Biskind v. United States [C. C. A. 6] 281 F. 47, 49, 28 A. L. R. 1377, certiorari denied 260 U. S. 731, 43 S. Ct. 93, 67 L. Ed. 486; Roth v. United States [C. C. A. 6] 294 F. 475, 478), but also for the reason that the judgment was a single one upon the conviction under all four counts, and was less than was imposable upon conviction under any one of the four counts.

[7] 3. At the close of the government's testimony defendant's counsel moved to dismiss the second, third, and fourth counts for the assigned reason, among others, that on each of the three checks involved in these respective counts the referee's approval appeared. There was no such approval thereon, unless in the bare fact that on the left-hand side of the face of the check the signature "R. M. Greer, Referee," appeared, without statement or purpose for which the check was given. The judge said that meant nothing to him, especially in view of what the court knows of the case, and directed that the record show that Greer pleaded guilty to extortion "before this court and was sentenced in this court." An ensuing colloquy between court and counsel developed that the extortion to which Greer pleaded guilty involved his fees in this identical estate, but not the items involved in the indictment against plaintiff in error, and that Greer was not charged as coconspirator in the instant case.

We agree with the judge that the checks did not, on their face, show the referee's approval or their purpose, and that it was for the jury, and not for the court, to say, in view of all the evidence in the case bearing upon intent, including defendant's admissions, through prior withdrawals and use of the

[1] Counsel for plaintiff in error say that his bank account "showed that a check for $440 had been drawn against the funds and paid out at the time said taxes were paid."

bankruptcy funds for matters not connected with the trust, whether the items in question were withdrawn with intent to use them in furtherance of the trust or whether with intent to appropriate them to his own use. Of the 15 checks drawn to defendant's personal order already referred to, but 2, besides the 3 forming the subject-matter of the second, third, and fourth counts, bore the signature of the referee, and these 5 were the latest ones drawn. Even the two checks for $500 each, before mentioned, "for compensation," etc., apparently in the defendant's hand, are without the referee's signature. The natural inference would be that the later use of that signature was because of the requirement of statute and rule.

[8] It is not clear that any exception was taken which the judge would naturally interpret as aimed at his statement of the fact of Greer's conviction. But, assuming otherwise, we think that in the situation presented, and, in view of the undisputed testimony already referred to, there was at least no reversible error in stating such fact. If the fact were relevant, its judicial cognizance was proper; and we are not prepared to say that the jury was not entitled to know facts, if public and judicial record in that court and in that estate tending to destroy an otherwise possible inference, contended for by plaintiff in error, in the presence of the jury, that the purpose and application of the checks in question had met with the actual approval of the referee, which, by necessary implication, must mean in the due exercise of official action.

[9] The court properly informed the jury that in his opinion the check involved in the second count tended to show that the amount thereof was withdrawn for defendant's use. The jury was fully instructed that the judge's views upon the facts were not controlling upon the jurors. Rucker v. Wheeler, 127 U. S. 85, 8 S. Ct. 1142, 32 L. Ed. 102; Graham v. United States, 231 U. S. 474, 480, 34 S. Ct. 148, 58 L. Ed. 319; Wallace v. United States (C. C. A. 6) 291 F. 972, 973–974. We think the charge was fair to defendant.

The judgment of the District Court is affirmed.