## UNITED STATES v. WARSZOWER.

### No. 334.

Circuit Court of Appeals, Second Circuit.

July 9, 1940.

Osmond K. Fraenkel and Edward I. Aronow, both of New York City, for appellant.

John T. Cahill, Lester C. Dunigan, Frank H. Gordon, Robert L. Werner, all of New York City, and Ashley J. Nicholas, of Washington, D. C., for United States.

Before L. HAND, CHASE, and PATTERSON, Circuit Judges.

PATTERSON, Circuit Judge.

The appellant was convicted of violation of 22 U.S.Code, section 220, 22 U.S.C.A. § 220, to the effect that "whoever shall willfully and knowingly use * * * any passport the issue of which was secured in any way by reason of any false statement" shall be subject to fine or imprisonment or both. The indictment charged that the appellant on September 30, 1937 used a passport in that he presented it to an immigrant inspector for the purpose of securing entry into the United States, and that the passport so used had been secured by false statements concerning name, citizenship, place of birth and residence. At the trial the prosecution showed that in July 1936 the appellant applied for passport as Robert William Wiener, claiming Atlantic City, New Jersey, as his place of birth and showing a certified extract from the record of births in the office of the registrar of vital statistics of Atlantic City. He stated that he was a citizen of the United States and had never resided outside the United States. A passport bearing number 332,207 was accordingly issued. To prove use of the passport by the appellant one Faire, an immigrant inspector, was called as a witness. Faire testified that on September 30, 1937 he boarded the steamer Normandie on its arrival at New York and examined the passengers to determine who were citizens and entitled to immediate entry, that the ship's manifest bore his signature and that while he had no recollection of the appellant, he could say from the name of Robert Wiener on the manifest, with passport number 332,207 alongside, that the passport had been presented to him, it being his invariable practice to examine the passport where the passport number was entered on the manifest, to check the information in the passport with the information on the manifest and to compare the photograph on the passport with the individual who presented it. Faire also testified that it was customary for citizens returning from abroad to present their passports. On the issue of falsity of the appellant's statements in applying for passport, there was evidence that the appellant in 1914 arrived in the United States under the name of Warszower, that the ship's manifest showed him to be of Russian nationality, born in Russia and never before in the United States, and that the appellant's declarations on arrival corresponded to the information in the manifest. In 1917 the appellant registered for the draft as Wiener and claimed exemption as an alien, born in Russia. In 1932 he made application for reentry permit under the name of Warszower, stating that he was an alien born in Russia and had entered this country in 1914. There was also evidence that the entry of the appellant's birth in the Atlantic City records was a forgery.

The case went to the jury, and a verdict of guilty was returned.

It is urged in the appellant's behalf that the presentation of a United States passport to an immigrant inspector on reentry into the country is not a "use" of the passport within the meaning of the statute. There was evidence in the case that it is customary for citizens returning from abroad to make this use of their passports. We consider the point in United States v. Browder, 2 Cir., 113 F.2d 97, decided June 24, 1940, and held that such a use is within the reach of the statute. Further discussion is unnecessary.

The appellant also urges that there was insufficient evidence that he presented the passport to the immigrant inspector The argument rests on a supposed equivocation in the testimony of Faire, the immigrant inspector. Faire did say that an American citizen did not need a passport to enter the country, that he could prove citizenship in some other way, and that the check mark which he made after the appellant's name did not necessarily mean that a passport was shown. But he testified repeatedly that the entry of the passport number on the manifest enabled him to say with assurance that he had been shown the passport and had checked the information on the manifest as to residence and place of birth against information in the passport. His testimony, if believed by the jury, made it plain that the passport issued to the appellant had been exhibited to him.

A third point is that the court below erred in submitting all four alleged false statements to the jury, and that the error was crucial because the jury was charged that

it might find the appellant guilty if convinced that any one of the four statements was false. The argument is that however it may have been as to the statement of name and place of birth, there was not enough evidence as to falsity of the statement that the appellant was a citizen of this country and of the statement that he had never resided abroad. It is not denied that there was proof of the appellant's declarations in 1914, 1917 and 1932 that he was an alien and that he had been born abroad, which necessarily meant that he had resided abroad. But it is urged that it was not enough for the government thus to match the appellant's earlier declarations against his statements in applying for passport and to rely on the former as proof that the later statements were false.

There is no merit in the argument. It is the rule that an accused may not be convicted on his uncorroborated confession. Wharton's Criminal Law, 12th Ed., sections 357–359. While the wisdom of such an arbitrary mandate is questionable, its existence in most of our states cannot be doubted. Daeche v. United States, 2 Cir., 250 F. 566. The rule, however, has to do only with uncorroborated confessions or admissions after the event, and there were no confessions or admissions after the event in this case. What the appellant wants is an extension of the rule to uncorroborated declarations of the accused made before the event. He says in effect that the falsity of a defendant's statement that he has never resided abroad may not be proved by his repeated prior declarations that he was born abroad and came to this country when he was 21, unless there be also independent evidence of residence abroad. The policy behind the requirement of corroboration for a confession is protection against the risk of an untrue confession, coerced or psychopathic. Wigmore on Evidence, 2070–2072. That

policy obviously has no bearing on declarations freely made years before the commission of the alleged offense. We know of no cases that push the uncorroborated confession rule to declarations of the accused made before the occurrence of the alleged crime, other than Gordnier v. United States, 9 Cir., 261 F. 910, and Duncan v. United States, 9 Cir., 68 F.2d 136. We think that those cases involve a departure from the reason of the rule, and we are unable to follow them. It would be arbitrary to the last degree to say that where a defendant has solemnly declared on three occasions that he was an alien and was born in Russia, such declarations are insufficient as matter of law to show the falsity of a later statement that he was a citizen and had never resided abroad.

The appellant's argument fails for another reason. There was corroborating evidence to support his earlier declarations of name, alienage, foreign birth and residence abroad. The manifest of the vessel that brought him here in 1914 gave his name as Warszower, his nationality Russian and his birthplace Russia. There was evidence that the entry of his birth in the Atlantic City records was forged. There was evidence that he had never been naturalized. These pieces of proof served to fortify the truth of the appellant's own declarations, and that is all that the rule as to confessions requires. On this point we adhere to our own decision in Daeche v. United States, supra, rather than to Forte v. United States, 68 App.D.C. 111, 94 F.2d 236.

We have not overlooked the appellant's argument that the charge of the court on the subject of residence was erroneous. We find no error in this or in any other part of the charge. The appellant had a fair trial; there were no errors; the verdict of the jury was supported by the evidence; and the judgment below will be affirmed.